# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| GREGORY HOLENDA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>INFINITY SELECT INSURANCE COMPANY and DOES 1 through 100, inclusive,<br><br>　　　　Defendants. | Case No. CV13-07128R(CWx)<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**<br><br>The Hon. Manuel L. Real |

## I. UNCONTROVERTED FACTS

1. Plaintiff Gregory Holenda was insured under an Infinity automobile policy, which provided UM coverage of $50,000 per accident and medical payment ("med-pay") benefits of $5,000. (Ex. 1 to Infinity's Motion for Summary Judgment, p. 004)

2. According to Holenda, in June 2009 he was at a gas station and another vehicle ran over his foot. (Declaration of Vicki Hall in support of Infinity's Motion for Summary Judgment, ¶ 4; Ex. 11, p. 73 )

3. In August 2009, Holenda's attorney, William Zuber, reported the accident to Infinity. He asked Infinity to open a claim under Holenda's med-pay coverage. (Ex. 2) In a separate letter, Zuber asked Infinity to open an uninsured/underinsured motorist claim. (Ex. 3)

4. Infinity immediately opened a med-pay claim. In late September 2009, Infinity learned that there was no insurance for the driver of the other vehicle, so it also opened a UM claim. (Hall Decl., ¶ 5)

5. In October 2009, Infinity asked Holenda to sign authorizations to allow it to obtain information from his medical providers. It also asked Holenda to provide information supporting any loss of earnings claim and other expenses. (Hall Decl., ¶ 6; Ex. 4)

6. In January 2010, Infinity received the medical authorizations. (Hall Decl., ¶ 7; Ex. 5) Infinity forwarded the authorizations to the medical providers whom Holenda had identified, and requested copies of their records. (Hall Decl., ¶ 6; Ex. 6)

7. Over the next two months, Infinity received Holenda's medical records. These did not contain any evidence of any fracture or ligament damage in his foot. They also showed that Holenda had received chiropractic treatment and physical therapy. (Hall Decl., ¶ 8; Ex. 7)

8. In March 2010, Infinity forwarded the medical information that it had

received to attorney Zuber. It also asked if Holenda had other medical bills or loss of earnings information to support his UM claim. (Hall Decl., ¶ 9; Ex. 8)

9. Throughout the remainder of 2010, Infinity repeatedly called and wrote to Zuber with follow-up requests for this information. (Hall Decl., ¶ 10; Ex. 9)

10. By January 2011, Infinity had paid the $5000 med-pay limits. (Hall Decl., ¶ 11 Ex. 10)

11. On March 30, 2011, Zuber wrote to Infinity, stating that "[a]t this point in time, the injuries to my client, Gregory Holenda have clarified and the case is amenable to a negotiated resolution." (Ex. 11, p. 073) The letter enclosed records for Holenda's treatment. It also enclosed Holenda's 2009 tax return and a report from Dr. Michael Price, an orthopedist. (Id., pp. 151-158)

12. Zuber claimed that: (i) Holenda's medical specials to date were $9457.40; (ii) future treatment would include medication costing $12,000 over 20 years, plus surgery costing $30,000; (iii) Holenda had incurred lost wages of $1800 per month, $37,800 to date, and would incur more; and (iv) Holenda continued to experience pain. According to Zuber, Holenda's special damages totaled $89,347.40. Zuber demanded that Infinity pay the $50,000 UM policy limit. (*Id.*, pp. 74-75)

13. Infinity reviewed the information that Zuber provided, along with the other information it had received on the claim, and evaluated the demand. Infinity noted that, after the accident, Holenda did not visit the ER and there was no indication that he suffered a fracture or ligament damage. Infinity questioned how Holenda's soft tissue injury would have caused him to miss more than a year of work. In addition, Infinity believed that the treatment for Holenda's soft tissue injury appeared excessive. (Hall Decl., ¶ 13)

14. Infinity believed that the value of the claim was about $25,000. Infinity had already paid $5000 in med-pay coverage. On April 27, 2011, it offered $20,000 in "new money" to settle Holenda's claim. (Hall Decl., ¶ 14; Ex. 12)

15. Holenda rejected Infinity's settlement offer and demanded arbitration. (Ex. 13) Infinity retained counsel for the arbitration. (Hall Decl., ¶ 16)

16. In written discovery responses, Holenda contended that his past wage loss had increased to $95,000 and that his future wage loss would be $150,000. (Ex. 14, p. 180)

17. Infinity's attorneys subpoenaed Holenda's medical records. (Declaration of Robert Reisinger in support of Infinity's Motion for Summary Judgment, ¶ 4) In August 2011, Infinity received records from Holenda's chiropractor. These revealed that Holenda had complained of and received treatment for pain in his feet before he accident, in 2005 as well as in 2008. (Hall Decl., ¶ 17; Ex. 15, pp. 202, 214-216)

18. Infinity took Holenda's deposition in late January 2012. (Reisinger Decl., ¶ 5)

19. Infinity retained Dr. Steven Pearson, an orthopedist, to conduct an independent medical examination ("IME"). (Reisinger Decl. ¶ 6; Hall Decl., ¶ 18) Dr. Pearson conducted the exam and provided a report in April 2012. (Ex. 17)

20. Dr. Pearson concluded that Holenda had returned to the same level of impairment that he had before the accident. Dr. Pearson opined that reasonable treatment after the accident would have consisted of 30 chiropractic/physical therapy treatments at $80 each ($2400), and that Holenda should have been able to return to work in six months. (Ex. 17, p. 251)

21. Holenda and Infinity had agreed upon a retired judge as an arbitrator. The parties later agreed to use a different arbitrator. (Reisinger Decl. ¶ 7)

22. In December 2012, Holenda filed his arbitration brief. (Ex. 18) He claimed the following special damages:

- Past medical specials: $14,359.40
- Future medical specials (surgery and medication): $42,000
- Lost income: $73,800 to date and continuing
- Other expenses: $7950 to hire people to care for his father and ill sister

23. In its arbitration brief, Infinity contended that medical specials of about $3000 and lost wages of up to $5000 would be reasonable. Infinity asserted that the maximum claim value should be $25,000, with a $5000 credit for its med-pay payments. (Ex. 19, pp. 265-266)

24. The arbitration went forward in late February 2013. The arbitrator then issued his award. (Ex. 20) He awarded Holenda (i) $5198 for past medical expenses, (ii) nothing for future medical expenses, (iii) $5000 for lost income, (iv) $3336 for household services to care for Holenda's sister and father. (*Id.*, pp. 276-278)

25. The arbitrator concluded that Holenda was entitled to general damages for pain and suffering of $57,842. Thus, he awarded Holenda the UM policy limit of $50,000. (Ex. 20, p. 279)

26. Infinity paid the $50,000 limit. (Ex. 21)

## II. CONCLUSIONS OF LAW

### A. Breach of Contract

1. Under California law, there can be no breach of contract where an insurer pays an arbitration award or the applicable policy limit. *Paulson v. State Farm Mut. Auto. Ins. Co.,* 867 F. Supp. 911, 917-18 (C.D. Cal. 1994) (insured could not state breach of contract claim where insurer initially denied uninsured motorist claim, but later paid full amount of arbitration award); *Maxwell v. Fire Ins. Exch.*, 60 Cal. App. 4th 1446, 1449, 70 Cal. Rptr. 2d 866 (1998) (holding that there can be no breach of contract where all contractual benefits have been paid, even if they were paid late); *accord Everett v. State Farm General Ins. Co.*, 162 Cal. App. 4th 649, 660, 75 Cal. Rptr. 3d 812 (2008).

2. Because Infinity paid the full amount of the arbitration award and the UM policy limit, it cannot be liable for breach of contract.

### B. Breach of the Implied Covenant

3. Even if an insurance company withholds policy benefits that it is

ultimately required to pay, that does not mean it breached the implied covenant of good faith and fair dealing. *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346-47, 108 Cal. Rptr. 2d 776 (2001); *Hanson v. Prudential Ins. Co.*, 783 F.2d 762, 766 (9th Cir. 1985).

4. The implied covenant requires insurers to be reasonable, not flawless or prescient. *Chateau Chamberay*, 90 Cal. App. 4th at 346-47.

5. To establish a breach of the implied covenant, a plaintiff must show that the insurer withheld benefits unreasonably and without proper cause. *Guebara v. Allstate Ins. Co.*, 237 F. 3d 987, 992 (9th Cir. 2001); *Rappaport-Scott v. Interinsurance Exch. of the Automobile Club*, 146 Cal. App. 4th 831, 837, 53 Cal. Rptr. 3d 245 (2007).

6. "In addition to the duty to deal fairly with the insured, an insurer owes competing duties to other policyholders and to stockholders not to honor meritless claims." *Thompson v. Cannon*, 224 Cal. App. 3d 1413, 1417, 274 Cal. Rptr. 608 (1990).

7. Withholding insurance benefits is not unreasonable where a "genuine issue" or "genuine dispute" exists regarding either coverage or the amount of payment due. *Guebara*, 237 F. 3d at 992; *Lunsford v. American Guarantee & Liability Ins. Co.*, 18 F. 3d 653, 656 (9th Cir. 1994); *Chateau Chamberay*, 90 Cal. App. 4th at 347.

8. An insurer "is entitled to be an advocate for its own interests." *Morris v. Paul Revere Life Ins. Co.*, 109 Cal. App. 4th 966, 976, 135 Cal. Rptr. 2d 718 (2003).

9. Whether a genuine dispute exists can be decided on summary judgment. *Guebara*, 237 F. 3d at 992 ("Under California law, a bad faith claim can be dismissed on summary judgment if the defendant can show that there was a genuine dispute as to coverage."); *see also; Franceschi*, 852 F. 2d at 1220, *Chateau Chamberay*, 90 Cal. App. 4th at 347.

10. In deciding whether there was a genuine dispute, "the court does not decide which party is 'right' as to the disputed matter, but only that a reasonable and legitimate dispute actually existed." *Chateau Chamberay*, 90 Cal. App. 4th at 347.

11. "A genuine dispute exists when an arbitrator awards substantially lower damages than [the insured] claims." *Maynard*, 499 F. Supp. 2d at 1162, citing *Rappaport-Scott*, 146 Cal. App. 4th at 830; *Rappaport-Scott*, 146 Cal. App. 4th at 833-834.

12. "Translating pain and anguish into dollars can, at best, be only an arbitrary allowance, and not a process of measurement." *Beagle v. Vasold*, 65 Cal. 2d 166, 172, 53 Cal. Rptr. 129 (1966). *Accord Capelouto v. Kaiser Found. Hosp.*, 7 Cal. 3d 889, 892, 103 Cal. Rptr. 856 (1972); *Greater Westchester Homeowners Assn. v. County of Los Angeles*, 26 Cal. 3d 86, 103, 160 Cal. Rptr. 733 (1979).

13. "The amount to be awarded [for pain and suffering] is 'a matter on which there legitimately may be a wide difference of opinion." *Seffert v. Los Angeles Transit Lines*, 56 Cal. 2d 498, 508, 15 Cal. Rptr. 161 (1961).

14. Courts have specifically held that insurers cannot be liable for bad faith for offering less for general damages than what an insured demands or eventually recovers in a UM claim. *Leo v. State Farm Mut. Auto. Ins. Co.*, 939 F. Supp. 1186 (E.D. Pa. 1996); *Eagle American Ins. Co. v. Frencho*, 675 N.E.2d 1312, 223 (Ohio Ct. App. 1996); *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 592-93 (E.D. Pa. 1999).

15. "The 'genuine dispute' doctrine may be applied where the insurer denied a claim based on the opinions of experts." *Fraley v. Allstate Ins. Co.*, 81 Cal. App. 4th 1282, 1293, 97 Cal. Rptr. 2d 386 (2000); *Chateau Chamberay*, 90 Cal. App. 4th at 349-51.

16. In particular, an insurer is entitled to rely on expert medical opinion. *Maynard*, 499 F. Supp. 2d at 1163 (insurer "entitled to rely on its orthopedic surgeon's report to dispute Plaintiff's claim").

17. Reasonable reliance on an expert precludes liability even if it later turns out that the expert opinion was wrong. *See Chateau Chamberay*, 90 Cal. App. 4th at 348 n.7 ("the court does not decide which party is 'right' as to the disputed matter, but only that a reasonable and legitimate dispute actually existed").

18. Several genuine disputes existed on Holenda's claim. First, the disparity between what Holenda claimed and what the arbitrator awarded (less than 10% the amount Holenda claimed) demonstrates that a genuine dispute existed over special damages. Second, general damages are inherently subject to genuine dispute. They were here. Infinity offered 3.2 times specials; the arbitrator awarded 11 times specials. Third, a genuine dispute existed based on Infinity's reliance on an expert. Infinity relied on a medical expert, who opined that Holenda's past treatment was excessive and that he didn't need surgery. A disagreement among experts creates a genuine dispute that bars a bad faith claim even when the trier of fact agrees with the insured's expert. *A fortiori* it created a genuine dispute here, where the arbitrator rejected the opinion of Holenda's expert and instead sided with Infinity's expert on the medical issues. As a matter of law, each of these genuine disputes bars Holenda's claim for bad faith.

19. Based on the forgoing, the Court grants Infinity's motion for summary judgment in its entirety.

Dated: February 13, 2014

_____
Unites States District Court Judge

USW 804216237.1